Jesse L. Miller (SBN 183229)
Email: jessemiller@reedsmith.com
Jennifer R. Fearnow (SBN 246007)
Email: jfearnow@reedsmith.com
Raymond A. Cardozo (SBN 173263)
Email: rcardozo@reedsmith.com
Joshua D. Anderson (SBN 312836)
REED SMITH LLP
101 Second Street
Suite 1800
San Francisco, CA 94105-3659
Telephone: +1 415 543 8700
Facsimile: +1 415 391 8269

Attorneys for Defendant
GREYHOUND LINES, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROCÍO CORDOVA, *individually and on behalf of all others similarly situated,*<br><br>Plaintiff,<br><br>vs.<br><br>GREYHOUND LINES, INC., and DOES 1-100,<br><br>Defendants. | Case No. 4:19-cv-442<br><br>**DEFENDANT GREYHOUND LINES, INC.'S NOTICE OF REMOVAL PURSUANT TO 28 U.S.C. §§ 1332 AND 1453**<br><br>Compl. Filed: November 8, 2018<br>Am. Compl. Filed: January 18, 2019<br>ACSC Case No. RG18928028<br><br>[Filed Concurrently with Civil Cover Sheet, Certification of Interested Parties] |

**TO THE CLERK FOR THE U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA AND TO ALL PARTIES:**

**PLEASE TAKE NOTICE** that Defendant Greyhound Lines, Inc. ("Greyhound") hereby removes this action from the Alameda County Superior Court to the United States District Court for the Northern District of California pursuant to 28 U.S.C. §§ 1332 and 1453. In support of this Notice of Removal, Defendant states the following:

## I.   Factual and Procedural Background

Greyhound provides intercity transportation services throughout North America. Plaintiff's sister purchased Plaintiff a Greyhound bus ticket for a trip between San Diego and Phoenix in November 2017. At some point along the way, agents from United States Customs and Border Protection ("CBP") boarded the bus and carried out an immigration inspection.

On November 8, 2018, Plaintiff Cordova filed an action against Greyhound alleging violations of the California Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*, the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*, and the Unruh Civil Rights Act., Cal. Civ. Code § 51(b).

Plaintiff alleges that Greyhound has a policy of cooperating with the CBP when CBP agents demand to board buses to carry out immigration inspections. According to Plaintiff, allowing CBP agents on board constitutes invidious discrimination, which violates the Unruh Civil Rights Act and runs counter to a disclosure on Greyhound's website that Greyhound would not discriminate against its customers.

Greyhound demurred to the Complaint on December 17, 2018. Greyhound pointed out that allowing CBP agents on board buses is not a corporate policy, but a legal duty ever since the 1952 enactment of 8 U.S.C. § 1357 as part of the Immigration and Nationality Act. That statute grants immigration agents the authority to board vessels within a reasonable distance from the border to carry out warrantless immigration inspections. 8 U.S.C. § 1357. A 1953 regulation defines "reasonable distance" to be 100 miles from a land or sea boundary of the United States. 8 C.F.R. § 287.1(a)(1).

Greyhound also demurred on the grounds that Plaintiff did not allege exposure to the

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

purportedly misleading disclosure, did not allege any injury, and did not allege that she had any interaction with CBP officers. Further, Greyhound sought dismissal of the action for failure to join CBP, since Plaintiff's action challenged CBP's statutory authority and any injunction against Greyhound would not bind CBP, providing Plaintiff with incomplete and ineffectual relief.

Importantly, Greyhound also challenged the Plaintiff's class action allegations. An adequate class representative must seek comprehensive remedies for absent class members, yet Plaintiff did not request the compensatory damages, restitution, or statutory damages that would have been available to the class.

Also on December 17, 2018, Plaintiff filed an *ex parte* application for a Temporary Restraining Order, which was set for hearing on December 18, 2018. On December 19, 2018, the court denied Plaintiff's application, finding no basis for an injunction. Thereafter, on December 21, 2018, Greyhound filed a motion to stay class discovery pending the court's resolution of its demurrer to the class allegations.

On January 18, 2019, Plaintiff filed her First Amended Complaint in lieu of opposing Greyhound's demurrer. In response to Greyhound's challenge that Plaintiff could not be an adequate class representative without seeking some form of damages, Plaintiff clarified that damages are indeed in play—she reserved the right to seek them at any time.

On January 25, 2019, Defendant filed this Notice of Removal.

## II. This Court Has Jurisdiction Under 28 U.S.C. §§ 1332(d) and 1453

The Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), confers original jurisdiction on the federal courts over class actions in which any plaintiff is diverse from any defendant and the amount in controversy exceeds $5 million. Under 28 U.S.C. § 1453(b), a defendant may remove an action to federal court if it meets the requirements of 28 U.S.C. § 1332(d).

This action meets each requirement of 28 U.S.C. § 1332(d) and is properly removable.

### A. The Parties Are Diverse

CAFA requires only minimal diversity between the parties to support jurisdiction. The diversity requirement is satisfied if "any member of a class of plaintiffs is a citizen of a State different from any defendant" or if "any member of a class of plaintiff is a . . . citizen . . . of a

foreign state and any defendant is a citizen of a State." 28 U.S.C. § 1332(d)(2). This requirement is satisfied here.

Greyhound is a Delaware corporation with its principal place of business in Dallas, Texas. Plaintiff purports to represent a class of California consumers. (First Am. Compl. ¶ 79). Moreover, Plaintiff's allegations suggest that foreign nationals may be among the class members. For example, in her original complaint, Plaintiff alleged that a recipient of Deferred Action for Childhood Arrivals—a Department of Justice program which grants protected status to some undocumented immigrants—was impacted by Greyhound's alleged policy. (*See, e.g.*, Compl. ¶ 12).

Because Greyhound is a citizen of Delaware and Texas while Plaintiff is a citizen of California, CAFA's diversity of citizenship requirement is met.

### B.    The Amount In Controversy Exceeds $5,000,000

Plaintiff alleges that she would have paid less for her Greyhound ticket or would not have purchased it if she knew of Greyhound's policy. Further, her claims under the Unruh Act and CLRA would entitle the class to a substantial award of statutory damages, easily surpassing the $5,000,000 amount in controversy under CAFA.

#### 1.    Plaintiff's Obfuscatory Reservation Of Rights Does Eliminate Damages

Plaintiff plays coy with the jurisdictional facts by alleging that she "reserves the right" to seek damages at any time, instead of simply claiming them in the prayer for relief outright. This is plain misdirection intended only to defeat federal jurisdiction by obscuring the amount in controversy.

Plaintiff's initial complaint sought only injunctive relief. Plaintiff's counsel reiterated the limited nature of relief by confirming to Defendant's counsel that Plaintiff sought only an injunction to change the challenged policy. However, Plaintiff has also styled her action as a putative class action, and has sought broad class discovery to this end. As Greyhound pointed out in its demurrer, a plaintiff cannot represent a class if she claims only a small subset of available remedies. *See Evans v. Lasco Bathware, Inc.*, 178 Cal. App. 4th 1417, 1433 (2009). Federal law is in accord on this point; courts throughout this circuit—including this one—hold that plaintiffs "cannot maintain a class action without seeking all available remedies for the class members." *Drimmer v. WD-40 Co.*,

No. 06-CV-900 W (AJB), 2007 WL 2456003, at *3 (S.D. Cal. Aug. 24, 2007); *Tasion Commc'ns, Inc. v. Ubiquiti Networks, Inc.*, 308 F.R.D. 630, 642 (N.D. Cal. 2015) (quoting *Drimmer*, 2007 WL 2456003); *Turcios v. Carma Labs., Inc.*, 296 F.R.D. 638, 846 (C.D. Cal. 2014).

Here, these authorities provided Plaintiff with only three options to respond to the demurrer: (1) drop the class allegations (and forgo class discovery); (2) add a class representative who wished to pursue damages; or (3) clarify that damages are indeed in play. In her First Amended Complaint, Plaintiff maintained the class allegations, and did not add an additional class representative. Instead, she responded to Greyhound's challenge to her adequacy as a class representative by clarifying that damages are indeed at issue in this litigation. Her qualification that she "reserves" the right is illusory. Under this Court's precedent, she *must* seek damages if she maintains a class action—particularly as she asserts in her complaint that she suffered economic injuries. *See Taison*, 308 F.R.D. at 641 (noting that plaintiff was inadequate representative when plaintiff complained of economic injuries but did not seek corresponding damages).

Ultimately, however, Plaintiff's obfuscation is immaterial. Courts in this circuit—including the Ninth Circuit—consider amounts "reserved" in the Complaint to determine the amount in controversy. *See, e.g.*, *Tomlinson ex rel. Young v. Geico Gen. Ins. Co.*, 433 F. App'x 499 (9th Cir. 2011) (determining value of declaratory judgment action by reference to agreement reserving right to seek up to $100,000 in damages); *Beaver v. NPC Int'l Inc.*, 451 F. Supp. 3d 1196, 1200 (D. Or. 2006) (where plaintiff "reserved right" to punitive damages, adding "potential claim for punitive" damages to other damages to satisfy amount in controversy).

Because Plaintiff has clarified that damages are in issue to support her class action, and because courts consider potential damages reserved in a complaint, this Court may properly consider the damages stemming from Plaintiff's claims.

### 2. Statutory Damages Easily Exceed $5 Million

Greyhound provides intercity transportation services to tens of thousands of passengers in California each year. Plaintiff's proposed class encompasses each and every one of them. (*See* First Am. Compl. ¶ 79). A conservative estimate of class members, for the purposes of this analysis only, would be 5,000 class members.

In her First Amended Complaint, Plaintiff asserts that she would have paid less for her Greyhound ticket or would not have purchased it at all if she knew that Greyhound buses were subject to CBP immigration inspections. (First Am. Compl. ¶ 60). Plaintiff also suggests that some passengers may have missed connecting buses as a result of CBP-related delays, presumably resulting in some quantum of damages. (*Id.* ¶ 105).

Under the CLRA, the minimum compensatory award of damages is $1,000. Cal. Civ. Code § 1780(a)(1). Since Plaintiff states that the class members have suffered damages, if only by overpaying for tickets, the minimum award for this harm would be $1,000. *See id.* For a class of 5,000 persons, this would amount to a total of $5 million.

Plaintiff's claim under the Unruh Civil Rights Act provides an even greater amount of statutory damages. The statute provides minimum statutory damages of $4,000 if the defendant is found liable for discrimination. Cal. Civ. Code § 52(a). For a class of 5,000 persons, this would result in an award of $20 million. This is to say nothing of the restitutionary remedies available under the UCL, which that statute makes cumulative of the $25 million and counting under the CLRA and Unruh Act. *See* Cal Bus. & Prof. Code § 17203.

These damages easily exceed $25,000,000 and greatly surpass the $5 million minimum under CAFA.

### 3. Plaintiff Will Incur Substantial Attorneys' Fees

Unlike absent class members, Plaintiff does seek monetary compensation for her attorneys.

In a recent CAFA case, the Ninth Circuit clarified that future attorneys' fees must be included in determining the amount in controversy where such fees are allowed to a prevailing party by law. *Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 794 (9th Cir. 2018). An award of attorneys' fees is permitted for Plaintiff's claims. *See, e.g.*, Cal. Civ. Code § 52(b)(3); Cal. Civ. Code § 1780(e); *Walker v. Countrywide Home Loans, Inc.*, 98 Cal. App. 4th 1158, 1179 (2002) (holding that attorneys' fees are available under UCL). Therefore, the Court should consider the amount of attorneys' fees Plaintiff is likely to claim at the conclusion of the litigation.

Likely attorneys' fees can be assessed by reference to similar cases. *See Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005) (finding district court properly considered damage award in

similar case); Beaver, 451 F. Supp. 2d at 1198 ("This court and others have sanctioned the introduction of decisions and awards in similar cases as evidence of the amount in controversy."). In another consumer class action brought by Plaintiff's and involving similar claims, the court awarded nearly $3 million in attorneys' fees. *Benson v. Kwikset Corp.*, 152 Cal. App. 4th 1254, 1276–77 (2007). In the earliest communications between the parties, Plaintiff's counsel represented that it had engaged in substantial investigation of Plaintiff's claims before filing suit. While this may have been mere posturing, it is indisputable that this action has been heavily litigated to this point. This is likely to continue, generating fees near or exceeding the amount in *Benson*.

Although the statutory damages demonstrate that the amount in controversy will far exceed $5 million, even a comparatively paltry recovery of damages will exceed the jurisdictional amount when added to the likely attorneys' fees at issue.

### III. Venue Is Proper In The Northern District Of California

The state court action was filed in the Superior Court of California for the County of Alameda, which is located within the United States District Court for the Northern District of California. Therefore, the Northern District is the "district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

The San Francisco or Oakland Divisions are the appropriate divisions pursuant to Local Rules 3-2(c) and (d). Pursuant to Local Rules 3-2(d), "all civil actions which arise in the counties of Alameda, Contra Costa, Del Norte, Humboldt, Lake, Marin, Mendocino, Napa, San Francisco, San Mateo or Sonoma shall be assigned to the San Francisco Division or the Oakland Division." The state court action was filed in Alameda County and thus falls within the San Francisco or Oakland Division. L.R. 3-2(c), (d).

### IV. The Procedural Requirements For Removal Are Satisfied

This Notice of Removal is timely under 28 U.S.C. § 1446(b). Plaintiff filed her First Amended Complaint on January 18, 2019, clarifying for the first time that damages are in issue for this action, even if not expressly claimed. This Notice of Removal is filed on January 25, 2019 and is thus filed within 30 days of the service of the removable complaint upon Defendant.

In accordance with 28 U.S.C. § 1446(a), true and correct copies of all process, pleadings, and

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

orders served upon defendant in the state court action are attached hereto as **Exhibit A.**

In compliance with 28 U.S.C. § 1446(d), Defendants will serve on Plaintiffs and file with the Clerk of the Superior Court of California for the County of Alameda a "Notice of Removal of Action To Federal Court," attaching a copy of this Notice of Removal. Defendants will also serve on Plaintiff and file with the Clerk of the Superior Court of California for the County of Alameda a "Notice to the Adverse Party of Removal To Federal Court," attaching a copy of this Notice of Removal.

**WHEREFORE**, Defendant respectfully removes this action from the Superior Court of California for the County of Alameda to this Court pursuant to 28 U.S.C. §§ 1332 and 1453.

DATED: January 25, 2019

REED SMITH LLP

By: _____
Jesse L. Miller
Attorneys for Defendant
GREYHOUND LINES, INC