1  Jesse L. Miller (SBN 183229)
   Email:     jessemiller@reedsmith.com
2  Jennifer R. Fearnow (SBN 246007)
   Email:     jfearnow@reedsmith.com
3  Raymond A. Cardozo (SBN 173263)
   Email: rcardozo@reedsmith.com
4  Joshua D. Anderson (SBN 312836)
   REED SMITH LLP
5  101 Second Street
   Suite 1800
6  San Francisco, CA  94105-3659
   Telephone: +1 415 543 8700
7  Facsimile: +1 415 391 8269

8  Attorneys for Defendant
   GREYHOUND LINES, INC.

9

10              UNITED STATES DISTRICT COURT

11           NORTHERN DISTRICT OF CALIFORNIA

12

13  ROCÍO CORDOVA, *individually and on behalf*          Case No. 4:19-cv-00442-PJH
    *of all others similarly situated,*
14                                                       **DEFENDANT GREYHOUND LINES,**
                        Plaintiff,                       **INC.'S NOTICE OF MOTION AND**
15                                                       **MOTION TO DISMISS PLAINTIFF'S**
           vs.                                           **FIRST AMENDED COMPLAINT; AND**
16
    GREYHOUND LINES, INC., and DOES 1-100,               **MEMORANDUM OF POINTS AND**
17                                                       **AUTHORITIES**
                        Defendants.
18                                                       Hearing Date: March 6, 2019
                                                         Hearing Time: 9:00 a.m.
19                                                       Courtroom: 3
                                                         Judge: Hon. Phyllis J. Hamilton
20
                                                         Compl. Filed: November 8, 2018
21                                                       Am. Compl. Filed: January 18, 2019
                                                         Notice of Removal Filed: January 25, 2019
22
                                                         [Filed Concurrently With Proposed Order
23                                                       Granting Motion]

24

25

26

27

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on March 6, 2019, at 9:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 3 – 3rd Floor of the United States District Court for the Northern District of California, located at 1301 Clay Street, Oakland, CA 94612, Defendant Greyhound Lines, Inc. ("Greyhound") will and hereby does move this Court for an order dismissing Plaintiff Rocío Cordova's ("Plaintiff") First Amended Complaint brought against Greyhound, and each purported claim set forth therein.

Greyhound makes this Motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on the grounds that Plaintiff's First Amended Complaint does not state a claim for which relief can be granted against Greyhound.  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

Greyhound also makes this Motion pursuant to Rule 12(b)(7) of the Federal Rules of Civil Procedure on the grounds that Plaintiff failed to join a party, the U.S. Customs and Border Protection, under Rule 19 of the Federal Rules of Civil Procedure.  Grounds also include that Plaintiff has failed to plead the reasons for nonjoinder pursuant to Rule 19(c).

Further, Greyhound makes this Motion pursuant to Rule 23 of the Federal Rules of Civil Procedure on the grounds that there is no reasonable possibility that Plaintiff can establish an appropriate class, specifically: that (1) the class is sufficiently numerous; (2) there are questions of law or fact common to the class; (3) Plaintiff's claims and defenses are typical to the class; (4) Plaintiff will fairly and adequately represent the class; and (5) the defendant has acted or refused to act in a manner common to the class.  *See* Fed. R. Civ. P. 23(a),(b)(2); *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 990 (N.D. Cal. 2009).

This motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the pleadings and records on file with the Court, and any such further evidence as may be presented at the time of the hearing on this Motion.

/ / /

/ / /

/ / /

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

DEFENDANT GREYHOUND'S NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFF'S FAC; MEMORANDUM OF POINTS AND AUTHORITIES

1    DATED:  February 7, 2019

2                                        REED SMITH LLP

3

4                                        By: /s/ Jesse L. Miller
                                             Jesse L. Miller
5                                            Attorneys for Defendant
                                             GREYHOUND LINES, INC.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT GREYHOUND'S NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFF'S FAC; MEMORANDUM OF POINTS AND AUTHORITIES

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ..................................................................................................... 1

II.   BACKGROUND ..................................................................................................... 2

    A.    Greyhound's Business and Governing Regulations ...................................... 2

    B.    The INA Act of 1952 ..................................................................................... 3

    C.    Plaintiff's Allegations ................................................................................... 3

III.  LEGAL STANDARD .............................................................................................. 4

IV.   DISCUSSION .......................................................................................................... 5

    A.    State Law Cannot Thwart Federal Mandates ................................................ 5

        1.    Standards In Conflict With Federal Law Are Preempted ................... 5

        2.    Section 1357 Has Never Been Held Unconstitutional........................ 6

            a.    *Almeida-Sanchez* And Its Progeny....................................... 6

            b.    Additional Authority............................................................. 8

    B.    The First Amended Complaint Should be Dismissed Because Plaintiff Failed To Join A Necessary Party, or CBP Should Be Joined In This Suit To Protect Its Enforcement Authority......................................................... 9

    C.    Plaintiff Does Not Identify a Discriminatory Policy Attributable To Greyhound.................................................................................................... 11

    D.    Plaintiff Alleges No Reliance on Purportedly Misleading Advertising.................... 13

    E.    Plaintiff Does Not Show Any Conduct Motivated By Her Protected Status............. 14

    F.    Plaintiff Pleads Insufficient Facts to Show Unfair Or Unlawful Conduct................ 16

        1.    Plaintiff Fails To Plead Facts Sufficient To Demonstrate Predicate Violations................................................................................. 16

        2.    Plaintiff Does Not Establish Unfairness .......................................... 17

    G.    There Is No Reasonable Possibility That Plaintiff Will Establish A Class ............... 18

        1.    Plaintiff Cannot Establish Commonality ......................................... 18

        2.    Plaintiff Cannot Establish Typicality.............................................. 20

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

DEFENDANT GREYHOUND'S NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFF'S FAC; MEMORANDUM OF POINTS AND AUTHORITIES

1

3.      Plaintiff Cannot Establish That She Is An Adequate Representative ........... 20

2

V.      CONCLUSION ..................................................................................................... 21

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

DEFENDANT GREYHOUND'S NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFF'S FAC; MEMORANDUM OF POINTS AND AUTHORITIES

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Almeida-Sanchez v. United States,*
5
    413 U.S. 266 (1973)..................................................................................................6, 7

6

*Angelucci v. Century Supper Club,*
    41 Cal. 4th 160 (2007) ...............................................................................................15
7

*Ashcroft v. Iqbal,*
8
    556 U.S. 662 (2009)....................................................................................................4

9

*Balistreri v. Pacifica Police Dep't.,*
    901 F.2d 696 (9th Cir. 1988) ......................................................................................4
10

*Bell Atlantic Corp. v. Twombly,*
11
    550 U.S. 544 (2007)....................................................................................................4

12

*Beyer v. Symantec Corp.,*
    333 F. Supp. 3d 966 (N.D. Cal. 2018) .......................................................................16
13

*Camacho v. Automobile Club of S. California,*
14
    142 Cal. App. 4th 1394 (2006) ...................................................................................17

15

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.,*
    20 Cal. 4th 163 (1999) ...............................................................................................16
16

*Chevron U.S.A., Inc. v. Nat'l Res. Def. Council, Inc.,*
17
    468 U.S. 1227 (1984)..................................................................................................6

18

*Davidson v. City of Westminster,*
19
    32 Cal. 3d 197 (1982) .................................................................................................11

20

*Drimmer v. WD-40 Co.,*
    No. 06-CV-900 W (AJB), 2007 WL 2456003, at *3 (S.D. Cal. Aug. 24, 2007).........20
21

*Florida v. Bostick,*
22
    501 U.S. 429 (1991)....................................................................................................12

23

*Gegenheimer v. Stevenson,*
    No. 1-16-cv-1270-RP, 2017 WL 2880867 (W.D. Tex. July 5, 2017) .........................12
24

*Gen. Tel. Co. of Sw. v. Falcon,*
25
    457 U.S. 147 (1982)....................................................................................................19

26

*Hanon v. Dataproducts Corp.,*
27
    976 F.2d 497 (9th Cir. 1992) ......................................................................................20

28

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

*Hansen v. Newegg.com Ams., Inc.*,
  25 Cal. App. 5th 714, 724 (2018) ...........................................................................14

*Havas v. Thornton*,
  609 F.2d 372 (9th Cir. 1979) .....................................................................................5

*Heller v. Doe*,
  509 U.S. 312 (1993)....................................................................................................6

*Hobby Indus. Ass'n of Am., Inc. v. Younger*,
  101 Cal. App. 3d 358 (1980) ...................................................................................17

*Kohli v. Gonzales*,
  473 F.3d 1061 (9th Cir. 2007) .................................................................................11

*Lee v. City of Los Angeles*,
  250 F.3d 668 (9th Cir. 2001) *overruled on other grounds by Galbraith v. City of
  Santa Clara*, 207 F.3d 1119 (9th Cir. 2002) .............................................................5

*Maryland v. Louisiana*,
  451 U.S. 725 (1981)....................................................................................................5

*Mercer v. Sw. Airlines*,
  No. 13-cv-05057-MEJ, 2014 WL 4681788 (N.D. Cal. Sept. 19, 2015) ....................12

*Meyer v. Sprint Spectrum L.P.*,
  45 Cal. 4th 634 (2009) .............................................................................................14

*Motors, Inc. v. Times Mirror Co.*,
  102 Cal. App. 3d 735 (1980) ...................................................................................17

*Olsen v. Breeze, Inc.*,
  48 Cal. App. 4th 608 (1996) ....................................................................................18

*Patel v. City of Montclair*,
  798 F.3d 895 (9th Cir. 2015) ...................................................................................20

*Roberts v. N. Am. Van Lines, Inc.*,
  394 F. Supp. 2d 1174 (N.D. Cal. 2004) ..................................................................5, 6

*Rookard v. Mexicoach*,
  680 F.2d 1257 (9th Cir. 1982) .................................................................................14

*Rubenstein v. The Gap, Inc.*,
  14 Cal. App. 5th 870, 877 (2017) ...........................................................................14

*Sanders v. Apple Inc.*,
  672 F. Supp. 2d 978 (N.D. Cal. 2009) .................................................................18, 21

DEFENDANT GREYHOUND'S NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFF'S FAC; MEMORANDUM OF POINTS AND AUTHORITIES

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

*Sateriale v. R.J. Reynolds Tobacco Co.*,
   697 F.3d 777 (9th Cir. 2012) ............................................................13, 17

*Shadoan v. World Sav. & Loan Ass'n*,
   219 Cal. App. 3d 97 (1990) ............................................................18

*Sprewell v. Golden State Warriors*,
   266 F.3d 979 (9th Cir. 2001) (a court need not "accept as true allegations that
   contradict matters properly subject to judicial notice or by exhibit") ...........................5

*Surrey v. TrueBeginnings, LLC*,
   168 Cal. App. 4th 414 (2008) ............................................................15

*Tasion Commc'ns, Inc. v. Ubiquiti Networks, Inc.*,
   308 F.R.D. 630 (N.D. Cal. 2015) ............................................................20

*Texas v. Johnson*,
   491 U.S. 397 (1989) ............................................................17

*Turcios v. Carma Labs., Inc.*,
   296 F.R.D. 638 (C.D. Cal. 2014) ............................................................21

*U.S. Postal Serv. v. Gregory*,
   534 U.S. 1 (2001) ............................................................11, 19

*United States v. Alvarez-Sanchez*,
   774 F.2d 1036 ............................................................14

*United States v. Angulo-Guerrero*,
   328 F.3d 449 (8th Cir. 2003) ............................................................8, 14

*United States v. Brignoni-Ponce*,
   422 U.S. 873 (1975) ............................................................7

*United States v. Castelo*,
   415 F.3d 407 (5th Cir. 2005) ............................................................8

*United States v. Dominguez-Prieto*,
   923 F.2d 464 (6th Cir. 1991) ............................................................8

*United States v. Drayton*,
   536 U.S. 194 (2002) ............................................................9, 12

*United States v. Hernandez*,
   739 F.2d 484 (9th Cir. 1984) ............................................................8

*United States v. Martinez-Fuerte*,
   428 U.S. 543 (1976) ............................................................7, 8, 12

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

DEFENDANT GREYHOUND'S NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFF'S FAC; MEMORANDUM OF POINTS AND AUTHORITIES

*United States v. Montero-Camargo,*
   208 F.3d 1122 (9th Cir. 2000) ............................................................................12

*United States v. Moya-Matute,*
   735 F. Supp. 2d 1306 (D.N.M. 2008) .................................................................14

*United States v. Ortiz,*
   422 U.S. 891 (1975).............................................................................................7

*United States v. Outlaw,*
   134 F. Supp. 2d 807 (W.D. Tex. 2001)...............................................................15

*United States v. Ruiz-Perez,*
   No. CR-11-561-TUC-JGZ (DTF), 2012 WL 1078887 (D. Ariz. Mar. 30, 2012) ...........................8

*United States v. Salerno,*
   481 U.S. 739 (1987).............................................................................................6

*United States v. Wise,*
   877 F.3d 209 (5th Cir. 2018) ...............................................................................9

*Wal-Mart Stores, Inc. v. Dukes,*
   564 U.S. 338 (2011).............................................................................................19

*Wolin v. Jaguar Land Rover N. Am., LLC,*
   617 F.3d 1168 (9th Cir. 2010) .............................................................................20

**Statutes**

8 U.S.C. § 1357 ....................................................................................... *passim*

8 U.S.C. § 1357(a)(3)...........................................................................................3

49 U.S.C. § 31502.............................................................................................2, 8

Cal. Civ. Code § 43............................................................................................17

Cal. Civ. Code §§ 1572, 1573............................................................................17

Cal. Civ. Code § 2100........................................................................................16

Cal. Civ. Code § 2104........................................................................................17

Cal. Evid. Code § 664........................................................................................11

California Civil Code §§ 2100–04......................................................................12

Civ. Code § 2103 .........................................................................................12, 16

Civil Rights Act of 1964 Title VI, 42 U.S.C. § 2000d, *et seq.* ...............2, 13, 14

DEFENDANT GREYHOUND'S NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFF'S FAC; MEMORANDUM OF POINTS AND AUTHORITIES

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

Consumers Legal Remedies Act, Cal. Civ. Code § 1750 ................................................16

False Advertising Law, Cal. Bus. & Prof. Code § 17500 ...........................................16

Unruh Civil Rights Act [Civ. Code § 51] ....................................................14, 16

**Rules**

Fed. R. Civ. P. 12(b)(7) & 19 ...................................................................9

Fed. R. Civ. P. 19(c) ..........................................................................10

Fed. R. Civ. P. 23(a),(b)(2) ...................................................................18

Fed. R. Evid. 201(b) ...........................................................................13

Federal Rules of Civil Procedure Rule 19 ..........................................................10

Rule 12(b)(6) ..................................................................................4

Rule 19(b) .....................................................................................10

**Regulations**

8 C.F.R. § 287.1 .......................................................................1, 6, 14

8 C.F.R. § 287.1(a)(1) ...........................................................................3

49 C.F.R. 396.9 ...............................................................................2, 8

**Other Authorities**

https://www.cbp.gov/border-security/along-us-borders/border-patrol-sectors/san-
    diego-sector-california/campo-station ...........................................................13

https://www.washingtonpost.com/local/public-safety/lawsuit-targets-greyhound-over-
    warrantless-immigration-stops-aboard-buses/2018/11/08/1ed612a0-e362-11e8-
    ab2c-b31dcd53ca6b_story.html?utm_term=.be4f9f004f46............................................9

https://www.youtube.com/watch?v=z1eEq1GQiWE ....................................................4

Judicial Council Of California Civil Jury Instruction, CACI No. 3060 (2011)....................15

Protecting Sensitive Locations Act, H.R. 1815, 115th ..........................................11

U.S. Const. Article VI, cl. 2 .................................................................5

DEFENDANT GREYHOUND'S NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFF'S FAC; MEMORANDUM OF POINTS AND AUTHORITIES

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.     INTRODUCTION**

Defendant Greyhound Lines, Inc. ("Greyhound") provides safe, reliable, and affordable intercity transportation without regard to race, ethnicity, immigration status, or other protected characteristic.  Its business is subject to state and federal statutes and regulations, including 8 U.S.C. § 1357, a statute which grants immigration officials authority to search any vehicle within a reasonable distance of any United States external boundary.  Regulations interpret "reasonable distance" as 100 air miles from an international border or a shoreline. 8 C.F.R. § 287.1.

The reach of the statute is broad.  According to the ACLU, nearly two-thirds of the nation's population lives within this zone—including the entire populations of Florida, New Jersey, and Massachusetts, which have no international border.  Unable to obtain relief from Congress to narrow or do away with the authority granted by the federal statute, plaintiffs improperly ask this Court to effectuate a legislative change that only Congress can authorize.

To that end, Plaintiff Rocío Cordova alleges she was on a Greyhound bus that Customs and Border Protection ("CBP") agents boarded within 100 miles of an international border.  Once on board, she asserts, the agents questioned passengers, eventually pulling an individual off the bus for questioning.  She also recounts reports of assertedly discriminatory behavior by CBP officers on Greyhound buses that she did not ride.  In her view, allowing the CBP officers on board is invidious discrimination against her on the basis of her race and/or ethnicity, contradicting assertions Greyhound makes on its websites that it will not discriminate against its passengers.

Putting aside that Greyhound is not responsible for the CBP's conduct, allowing officers on board is not a discriminatory policy, but a legal duty when a bus is within 100 miles of the border, as it was in Plaintiff's case.  The Supreme Court has limited application of 8 U.S.C. § 1357 in cases involving individual drivers but has never clarified its application to corporations like Greyhound.  It is not an idle distinction; unlike an individual's car, Greyhound buses are subject to warrantless searches by state and federal officials.  Until the scope of Greyhound's duty is clear, it must follow the law as it exists, and California's laws cannot impose obligations inconsistent with those federal duties.  Plaintiff's attempt to push Greyhound into conflict with CBP must fail as unlawful.

1    Despite the conspicuous failure to mention that Plaintiff's bus was subject to 8 U.S.C.

2  § 1357, or that she personally suffered discriminatory treatment by CBP, Plaintiff seeks to represent

3  a class of *all* California citizens who *ever* purchased a Greyhound ticket.  The overbroad class

4  includes those with time-barred claims, those whose rides were uninterrupted by CBP, and those

5  who, like Plaintiff, were never singled out for questioning or harmed by CBP.  Nor could it be said

6  that Plaintiff is an adequate class representative, or that her claims are typical of any well-defined

7  class.  Indeed, her failure to identify a personal experience of discriminatory treatment render her

8  subject to unique defenses that will consume the litigation.

9    Plaintiff's overreaching reveals the game plan: disparage Greyhound with widely publicized

10  and inflammatory accusations of racial discrimination and threaten it with costly class discovery to

11  provoke a quick settlement.  While Greyhound is already on record saying it does not support CBP's

12  actions and will support legislative efforts to change 8 U.S.C. § 1357, Greyhound will not be

13  intimidated by hard-nosed litigation tactics and has no interest in being forced into legal conflict

14  with Plaintiff's true target: CBP, particularly when it has no stake in the constitutionality of that

15  statute.  CBP stands to lose authority from Plaintiff's proposed injunction, so it is an indispensable

16  party that must be joined to defend its own interest.  And Plaintiff's failure to name CBP as a party

17  was telling and provides an independent basis for dismissal.

18  **II.    BACKGROUND**

19    **A.    Greyhound's Business and Governing Regulations**

20    For more than a century, Greyhound has provided intercity transportation services throughout

21  North America.  As a passenger carrier operating in interstate commerce, Greyhound is subject to

22  the jurisdiction of the Federal Motor Carrier Safety Administration ("FMCSA"), an agency within

23  the Department of Transportation.  Among other things, the FMCSA regulates safety, drivers and

24  their qualifications, and record-keeping standards, and it is authorized by statute and regulation to

25  board and inspect subject vehicles in operation.  *See* 49 U.S.C. § 31502; 49 C.F.R. 396.9.

26    Because Greyhound receives federal funds, it is subject to Title VI of the Civil Rights Act of

27  1964, 42 U.S.C. § 2000d, *et seq.*  This is set forth on Greyhound's website with a required notice

28  that it will not discriminate against its passengers on account of any protected characteristic.  (*See*

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

DEFENDANT GREYHOUND'S NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFF'S FAC; MEMORANDUM OF POINTS AND AUTHORITIES

1   Compl. ¶ 20).

2   **B.   The INA Act of 1952**

3   In 1952, Congress passed the Immigration and Nationality Act ("INA").  One result of the

4   INA is 8 U.S.C. § 1357.  That statute provides immigration officers the authority to, without a

5   warrant, board any vehicle within a reasonable distance of an external boundary of the United States

6   to search for aliens. 8 U.S.C. § 1357(a)(3).  Regulations have defined "reasonable distance" to be

7   100 air miles, and "external boundary" to include land boundaries and shorelines.  8 C.F.R.

8   § 287.1(a)(1).

9   **C.   Plaintiff's Allegations**

10   Plaintiff asserts she rode a Greyhound bus between San Diego and Phoenix, presumably

11   along Interstate 8, which runs near the Mexican border.  (*See* First Am. Compl. "FAC" ¶ 52).  She

12   alleges that, while still in California, the bus stopped and between two and four immigration officials

13   boarded the bus and "worked from the front to the back of the bus."  (*Id.*).  Plaintiff asserts that,

14   because she is Latina, she is "well aware" where the immigration checkpoints are along the route,

15   and that the inspection did not occur at one.  (*Id.*).

16   In her initial complaint, Plaintiff recounted that a recipient of Deferred Action for Childhood

17   Arrivals ("DACA"), by definition an undocumented immigrant, was removed from the bus for

18   questioning before being returned.  (Orig. Compl. ¶ 12).  In her First Amended Complaint, Plaintiff

19   drops any reference to the individual's DACA status, instead identifying her as a "young Latina

20   woman." (FAC ¶ 57).  The process is alleged to have taken around 20 to 30 minutes.  (*Id.* at 58).

21   Plaintiff does not allege that she was approached or questioned by the immigration agents.  (*Id.* 52-

22   59).  Nor does she allege that the bus arrived in Phoenix later than expected.  (*See id.*).

23   Plaintiff's experience with CBP agents is different from the experiences of others alleged in

24   her First Amended Complaint.  For example, she states that a Korean American woman was roused

25   for questioning on a Greyhound bus.  (*See id.* ¶ 63).  The bus in question was traveling between San

26   Diego and Los Angeles, almost certainly within 100 miles of the ocean.  Next, a passenger in

27   Indio—within 100 air miles of both the ocean and Mexican border—was purportedly harassed by

28   CBP agents after he began to film them.  (*Id.* ¶ 65).  It is unstated whether anyone else filmed the

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

– 3 –

officers and how they were treated.  (*See id.*).  Next, CBP agents purportedly stopped a Latino passenger to investigate his immigration status as he tried to board a bus.  (*Id.* at ¶ 66).  It appears from the allegation that the officers were not on board the bus, and they purported to have some level of suspicion, contradicting Plaintiff's allegation that Greyhound intentionally waits to entrap passengers aboard its buses for immigration inspections.  (*See id.* ¶¶ 6, 66).

A 2016 YouTube video (viewable at https://www.youtube.com/watch?v=z1eEq1GQiWE) allegedly depicts CBP questioning passengers on board a Greyhound bus.  (*Id.* ¶ 68).  Though Plaintiff insists the video "depicts the harassment and humiliation that non-white passengers face," the footage does not bear that out. Rather it shows the officers detaining the cameraman, whose ethnicity is neither evident nor alleged, after he refused to answer questions about his citizenship.

The final allegation notes that a Jamaican woman and a Trinidadian girl were detained or arrested following CBP questioning.  (*Id.* ¶ 70).  The Complaint does not specify whether: either was "non-white," the questioning occurred on the roadside, at a station, or a checkpoint, the inspection was supported by a warrant, probable cause, or reasonable suspicion, or that the two individuals were singled out or that other passengers were not questioned.  (*Id.*).

Plaintiff further asserts vague allegations that a Greyhound bus driver accosted an African American passenger, and that a Muslim group has claimed that a passenger was removed from a bus for speaking Arabic.  (FAC ¶ 71).  Neither incident is alleged to involve CBP inspections.  (*See id.*).

## III.   LEGAL STANDARD

A motion to dismiss brought pursuant to Rule 12(b)(6) tests the legal sufficiency of the Complaint to determine whether there is a "lack of a cognizable legal theory," or "the absence of sufficient facts alleged under a cognizable legal theory."  *Balistreri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1988).

A complaint does not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).  "Factual allegations must be enough to raise a right to relief above the speculative level."  *Bell Atlantic Corp.,* 550 U.S. at 555.  The Court is "not bound to accept as true a legal conclusion couched as a factual allegation."  *Ashcroft*, 556 U.S. at 678.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

– 4 –

1    Moreover, where it is clear that amendment would be futile, the court may dismiss the complaint

2    without leave to amend. *See Havas v. Thornton*, 609 F.2d 372 (9th Cir. 1979).

3         This Court is permitted to "take judicial notice of matters of public record without converting

4    a motion to dismiss into a motion for summary judgment." *Lee v. City of Los Angeles*, 250 F.3d 668,

5    689 (9th Cir. 2001) (internal citations omitted) *overruled on other grounds by Galbraith v. City of*

6    *Santa Clara*, 207 F.3d 1119 (9th Cir. 2002). In reviewing a motion to dismiss, courts may also

7    disregard any allegation made in Plaintiff's complaint that is inconsistent with judicially noticeable

8    documents.  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (a court need not

9    "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit").

10   **IV.   DISCUSSION**

11        State law may not prescribe standards inconsistent with federal mandates.  Thus Plaintiff may

12   not force Greyhound to defy requests from CBP agents that federal law permits. Because Plaintiff

13   bases each of her claims on the premise that Greyhound may not lawfully permit CBP agents on

14   board, each claim must fail.  What's more, Greyhound should not be forced to defend CBP's interest

15   in this action.  CBP should be joined, and the matter should be dismissed in CBP's absence.

16        Plaintiff's claims fail for reasons independent of 8 U.S.C. § 1357:  she fails to establish that

17   any purported wrongdoing caused her harm, and does not identify any policy that differentiates

18   between passengers.  Finally, Plaintiff's allegations fail on their face to put forward an ascertainable

19   class or a community of interest.  Her class allegations should therefore be dismissed.

20        **A.   State Law Cannot Thwart Federal Mandates**

21             **1.   Standards In Conflict With Federal Law Are Preempted**

22        Our federal Constitution provides that the laws of the United States are the supreme law of

23   the land, "any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."  U.S.

24   Const. art. VI, cl. 2.  "It is basic to this constitutional command that all conflicting state provisions

25   be without effect." *Maryland v. Louisiana*, 451 U.S. 725, 746 (1981).  A state law is preempted if it

26   does not permit compliance with federal law or if it obstructs the execution of federal objectives.

27   *Roberts v. N. Am. Van Lines, Inc.*, 394 F. Supp. 2d 1174, 1178 (N.D. Cal. 2004) (dismissing CLRA

28   claims against motor carrier as preempted).

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

– 5 –

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1    Here, deeming Greyhound's accession to CBP demands to be unlawful would prevent it from

2  complying with orders that 8 U.S.C. § 1357 permits, and would obstruct the use of federal authority

3  Congress provided.  To the extent the duty Plaintiff seeks to impose on Greyhound thwarts federal

4  objectives, it is preempted.  *See Roberts*, 394 F. Supp. 2d at 1178.  While the United States Supreme

5  Court has limited the statute's reach in as-applied challenges, as explained below, the Supreme

6  Court's limited holdings do not clarify the statute's application to businesses like Greyhound.

7    Under federal law, a statute is presumed to be constitutional.  *Heller v. Doe*, 509 U.S. 312,

8  320 (1993).  The as-applied challenges discussed below do not amount to facial unconstitutionality,

9  which requires a showing that a statute is void in *all* applications.  *United States v. Salerno*, 481 U.S.

10  739, 745 (1987).  Thus, Section 1357's application to Greyhound is presumptively constitutional.

11  Plaintiff's claims seek to impose a standard that thwart the statute's operation of that statute.

12  Accordingly, her claims should be dismissed as preempted.

13    2.    **Section 1357 Has Never Been Held Unconstitutional**

14    No court has declared 8 U.S.C. § 1357 to be facially unconstitutional.  Nor has any court

15  found 8 C.F.R. § 287.1 either unconstitutional or an unreasonable interpretation of the statute.

16  Therefore, the CBP's interpretation should be accorded deference.  *See Chevron U.S.A., Inc. v. Nat'l

17  Res. Def. Council, Inc.*, 468 U.S. 1227 (1984) (holding that courts must defer to an agency's

18  interpretation of a statute it implements).  Over the years, however, several private motorists have

19  successfully asserted as-applied challenges to the statute, resulting in Supreme Court cases limiting

20  the statute's impact on them.  But, as explained below, these decisions do not apply to Greyhound.

21    a.    *Almeida-Sanchez* And Its Progeny

22    The first of these cases is *Almeida-Sanchez v. United States*, 413 U.S. 266 (1973).  There,

23  Border Patrol agents stopped the defendant's car on an east-west highway 25 miles from the border

24  during a "roving patrol."  *Id.* at 267.  The agents searched the vehicle, found marijuana, and arrested

25  the defendant.  *Id.* at 269.  The officers admitted that they had no reasonable suspicion to stop or

26  search the vehicle, but claimed justification in 8 U.S.C. § 1357.  *Id.* at 268.  The Court disagreed.  It

27  reasoned that the statute did not permit the warrantless search of the defendant's car because he was

28  not stopped at the border or its equivalent, where the Fourth Amendment permits warrantless

– 6 –

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

searches.  *Id.* at 273.  Critically, however, the Court distinguished cases permitting warrantless searches of closely regulated businesses.  *Id.* at 271.  The Court observed that the "difference between those cases and this one is that businessmen engaged in such federally licensed and regulated enterprises accept the burdens as well as the benefits of their trade, whereas the petitioner here was not engaged in any regulated or licensed business."  *Id.*

The Court did not resolve the open question of the statute's application to regulated businesses in its next relevant case, *United States v. Brignoni-Ponce*, 422 U.S. 873, 876 (1975).  Rather, according to the Court, "[t]he only issue presented for decision [was] whether a roving patrol may stop a vehicle in an area near the border and question its occupants when the only ground for suspicion is that the occupants appear to be of Mexican ancestry."  *Id.* at 876.  It ruled immigration authorities could not stop defendants on that basis, except perhaps at the border or its functional equivalent.  *Id.* at 884.  Justice Rehnquist wrote a separate concurrence to note the decision was "by its terms and by its reasoning concerned only with the type of stop involved in this case."  *Id.* at 886.

The Court issued *United States v. Ortiz*, 422 U.S. 891 (1975), on the same day as *Brignoni-Ponce*.  Unlike the prior two cases, the defendant in *Ortiz* was stopped at a fixed checkpoint, not by a roving patrol.  *Id.* at 891–92.  Border Patrol agents searched his vehicle and discovered three aliens in the trunk.  *Id.* at 892.  The agents justified their search by pointing out facts that distinguished *Almeida-Sanchez*.  First, they noted that their discretion was limited by the location of the fixed checkpoint.  *Id.* at 894.  Second, the agents argued that a checkpoint stop was less intrusive than being stopped by a roving patrol.  *Id.*  The Court agreed that these distinctions were relevant to the propriety of the *stop*, effectively validating § 1357 in those circumstances.  *Id.* at 895.  It disagreed, however, that they sufficiently justified a more intrusive *search*.  *Id.*  Again writing a separate concurrence, Justice Rehnquist stressed that "the Court's opinion is confined to full searches, and does not extend to fixed-checkpoint stops for the purpose of inquiring about citizenship."  *Id.* at 898.

The Court upheld the constitutionality of warrantless immigration stops at checkpoints in *United States v. Martinez-Fuerte*, 428 U.S. 543 (1976).  Balancing the government's interest against a motorist's right to privacy, the Court found the need to make checkpoint stops was great, while the intrusion occasioned by the stop—and diversion of some motorists for further questioning—was

– 7 –

minimal.  *Id.* at 557–58.  Thus, "even if it be assumed that such referrals are made largely on the basis of apparent Mexican ancestry, we perceive no constitutional violation."  *Id.* at 563; *see United States v. Ruiz-Perez*, No. CR-11-561-TUC-JGZ (DTF), 2012 WL 1078887, at *5 (D. Ariz. Mar. 30, 2012) (noting discretion of officers to refer motorists for questioning based on apparent ancestry).

The Ninth Circuit has found that the reasoning of *Martinez-Fuerte* applies with equal force to temporary checkpoints.  *United States v. Hernandez*, 739 F.2d 484 (9th Cir. 1984).

### b.    Additional Authority

As Justice Rehnquist insisted, the questions *Almeida-Sanchez* and its progeny resolved were narrow ones.  They did not answer whether § 1357 permits warrantless stops of a Greyhound bus for the purpose of questioning its passengers.  Subsequent decisions suggest an affirmative answer.

As noted, Greyhound buses may be stopped, boarded, and inspected by federal agents at any time without a warrant including for other-than immigration purposes.  *See* 49 U.S.C. § 31502; 49 C.F.R. 396.9.  Courts around the country have found other industries subject to FMCSA regulation to be "pervasively regulated" such that warrantless searches may be justified.  *See United States v. Castelo*, 415 F.3d 407, 410 (5th Cir. 2005) (finding commercial trucking to be "pervasively regulated industry"); *United States v. Dominguez-Prieto*, 923 F.2d 464, 468 (6th Cir. 1991) (on basis of FMCSA regulations, finding common carriers in trucking industry to be pervasively regulated).

Further complicating the matter, the Eighth Circuit has founded that CBP agents who boarded a Greyhound bus at a station in Ogallala, Nebraska—more than 500 miles from any border—acted consistently with the Constitution.  *United States v. Angulo-Guerrero*, 328 F.3d 449 (8th Cir. 2003).  In a concurring opinion, one judge explained that CBP had effectively decided to make the bus station a temporary checkpoint, and the resulting intrusion was minimal.  *Id.* at 453. Under this authority, Plaintiff's allegation that CBP works out of Greyhound terminals *weakens* her case.

These authorities place Greyhound in a considerably different position than private motorists. The history of regulation and warrantless inspection diminishes Greyhound's expectation of privacy and that of its riders, and the intrusion occasioned by stops at stations for questioning has been deemed minimal.  Thus, § 1357 likely has broader application to Greyhound than to private

– 8 –

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1    motorists, and neither *Almeida-Sanchez* nor its progeny define this outer limit.

2        Fourth Amendment interests of passengers is a question distinct from Greyhound's interest—

3    though bus passengers, too, have a diminished expectation of privacy as compared to private cars.

4    *See United States v. Wise*, 877 F.3d 209, 218 (5th Cir. 2018).  Once CBP accesses a bus—whether

5    by consent or by operation of law—passengers retain their right to refuse questioning by agents or to

6    leave the bus.  *See, e.g.*, *United States v. Drayton*, 536 U.S. 194, 203–04 (2002).  The Supreme

7    Court has rejected the argument that passengers cannot exercise their rights simply because the

8    encounter occurs on the "cramped confines" of a bus.  *Id.* at 204.  ("Indeed, because many fellow

9    passengers are present to witness officers' conduct, a reasonable person may feel even more secure

10   in his or her decision not to cooperate with police on a bus than in other circumstances.").

11       These authorities thus provide Greyhound substantial reason to believe the holdings of

12   *Almeida-Sanchez* are inapplicable to it.  Given the presumption of constitutionality, Greyhound must

13   presume that CBP's requests to board its buses are valid.

14       **B.      The First Amended Complaint Should be Dismissed Because Plaintiff Failed To**

15   **Join A Necessary Party, or CBP Should Be Joined In This Suit To Protect Its Enforcement**

16   **Authority**

17       Greyhound intends to go no further than to establish that there is an open question whether 8

18   U.S.C. § 1357 is constitutional as applied to Greyhound, and that the law is presumed constitutional

19   absent a clear showing to the contrary.  Greyhound has no interest in defending the statute's ultimate

20   constitutionality—it is on the record calling for the law to be changed. [1]  And it is CBP,[2] not

21   Greyhound, that stands to lose statutorily conferred authority as a result of the injunction Plaintiff

22   seeks.  As such, the Complaint must be dismissed, or CBP should be joined in this action to protect

23   its interests.  *See* Fed. R. Civ. P. 12(b)(7) & 19.

24       The Complaint fails due to Plaintiff's failure to join CBP as a necessary party. Pursuant to

---

[1] *See* https://www.washingtonpost.com/local/public-safety/lawsuit-targets-greyhound-over-warrantless-immigration-stops-aboard-buses/2018/11/08/1ed612a0-e362-11e8-ab2c-b31dcd53ca6b_story.html?utm_term=.be4f9f004f46.  This runs contrary to Plaintiff's assertion that "Greyhound has refused to object and make clear to CBP that it does not authorize" immigration inspections aboard its buses.  (*See* FAC ¶ 17).

[2] Here, references to CBP include its Commissioner, Kevin McAleenan, and/or any other responsible persons.

– 9 –

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

Rule 19 of the Federal Rules of Civil Procedure, a party must be joined to the action if the court cannot afford complete relief in their absence and the person claims an interest relating to the subject of the action, and the person's absence impedes the person's ability to protect the interest or otherwise leaves an existing party subject to inconsistent obligations.  *See* Fed. R. Civ. P. 19.  If the person "cannot be joined," then the case may be dismissed if the missing party is indispensable to the action.  *Id.* 19(b). The plaintiff must plead the reasons for failing to join a necessary party.  *Id.* 19(c).  Here, CBP falls squarely within that definition and Plaintiff was required to either name the agency or explain why she could not do so.  *See* Fed. R. Civ. P. 19(c).  Consequently, dismissal is required under Rule 19 because Plaintiff did not plead any reason for this non-joinder.

If CBP is not joined, Plaintiff will be unable to obtain complete relief.  Even if this Court deems CBP's application of 8 U.S.C. § 1357 to Greyhound unconstitutional, the ruling will have no preclusive effect on CBP as a non-party.  Moreover, assuming Plaintiff can obtain an injunction forcing Greyhound to withhold consent to CBP searches, the injunction would be a dead letter to CBP agents who believe Greyhound's consent is not necessary.  The class members would thus remain subject to the same conduct at the hands of CBP agents and could not obtain complete relief.

CBP also has an interest in this litigation.  Plaintiff's requested injunction frustrates the exercise of enforcement authority under § 1357 that has never been ruled unconstitutional.  CBP is unable to protect this interest unless it is joined.  Again, Plaintiff must demonstrate that 8 U.S.C. § 1357 is unconstitutional to avoid preemption, and Greyhound has no interest in defending the statute.  Without CBP's joinder, the Court will be deprived of the benefit of a truly adversarial proceeding, and CBP may well find its wings clipped as a result.

Finally, resolution of this controversy without CBP's joinder would subject Greyhound to conflicting obligations.  For example, Plaintiff seeks an injunction forbidding Greyhound from allowing CBP officers aboard its buses, yet Greyhound would still be subject to demands by CBP agents pursuant to 8 U.S.C. § 1357 because the agency would not be bound by the Court's injunction.  Greyhound would therefore be in an untenable position: violate the Court's injunction or risk liability for obstructing CBP inspections.

In fairness, if the Complaint is not dismissed, CBP should be joined.  Plaintiff should name

– 10 –

1   her true adversary in this battle in which Greyhound has no stake.  It is inequitable to force

2   Greyhound to choose between defending CBP's interest or precipitating its own battle with CBP due

3   to Plaintiff's requested injunction.

**C.      Plaintiff Does Not Identify a Discriminatory Policy Attributable To Greyhound**

5          At root, the Greyhound policy Plaintiff complains of is its cooperation with presumptively

6   lawful orders by federal agents wishing to board the bus to carry out an immigration inspection.  It is

7   apparent from the pleadings that this policy is common to *all* passengers regardless of the perceived

8   or actual identities of those on board.  Indeed, Plaintiff asserts that the officers worked from front to

9   back, effectively preventing *anyone* from exiting the bus without passing them.

10          Plaintiff's primary issue is the conduct of the CBP officers after boarding the bus, which she

11   perceives as discrimination against individuals she perceives as "non-white."  Greyhound, however,

12   has no control over the CBP officers, nor is it responsible for their actions.  *See Davidson v. City of*

13   *Westminster*, 32 Cal. 3d 197, 203 (1982) ("As a general rule, one owes no duty to control the

14   conduct of another . . .").  This conclusion is not altered by the letter from 23 members of Congress

15   who expressed the view that 8 U.S.C. § 1357 does not authorize CBP's actions.  For one thing, these

16   members do not claim to be percipient witnesses to any immigration inspection aboard Greyhound

17   buses.  Further, these members of Congress are vested with the constitutional authority to amend or

18   repeal the statute, but they have not done so.[3]  The power to interpret the laws, by contrast, is vested

19   exclusively in the courts.

20          Similarly, Greyhound is not made responsible for CBP actions simply because CBP may

21   have previously engaged in activity perceived as discrimination.  Just as a statute is presumed to be

22   constitutional, the law does not presume public officials will discharge their duties in an

23   unconstitutional manner.  The opposite is true.  *U.S. Postal Serv. v. Gregory*, 534 U.S. 1, 10 (2001)

24   ("[W]e note that a presumption of regularity attaches to the actions of Government agencies . . .");

25   *Kohli v. Gonzales*, 473 F.3d 1061, 1068 (9th Cir. 2007); Cal. Evid. Code § 664 ("It is presumed that

26   official duty has been regularly performed."); *see also Gegenheimer v. Stevenson*, No. 1-16-cv-1270-

27   _____
[3] Rep. Joaquin Castro has cosponsored a bill that largely forbids immigration enforcement in
28   "sensitive location" [Protecting Sensitive Locations Act, H.R. 1815, 115th Cong. (2017)], but
notably, the bill does not restrict enforcement aboard Greyhound buses.

DEFENDANT GREYHOUND'S NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFF'S FAC; MEMORANDUM OF POINTS AND AUTHORITIES

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1   RP, 2017 WL 2880867, at *2 (W.D. Tex. July 5, 2017) (refusing to assume that state agency would

2   engage in racial discrimination against plaintiff).  Plaintiff asks this Court to flip that presumption on

3   its head to presume that CBP agents will *necessarily* engage in impermissible discrimination.

4          Nor do Plaintiff's allegations that Greyhound is a common carrier change this conclusion.

5   Nothing in sections 2100–04 of the California Civil Code impose a duty on Greyhound to prevent

6   passengers' exposure to law enforcement activity.  Nor could it; to the extent these common carrier

7   duties conflict with federal law, courts have found them preempted.  *E.g.*, *Mercer v. Sw. Airlines*,

8   No. 13-cv-05057-MEJ, 2014 WL 4681788, at *5 (N.D. Cal. Sept. 19, 2015) (dismissing without

9   leave to amend claim that airline removed passenger for discriminatory reasons in violation of Civ.

10  Code § 2103).  Instead, the statutes detail the services Greyhound must provide its passengers and

11  the duty of care it owes with respect to safety.  *See* Cal. Civ. Code §§ 2100–04.

12         Even if Plaintiff could establish that the officers considered a passenger's apparent ethnicity

13  in approaching him or her for questioning, the Supreme Court has found that officers may lawfully

14  do so. *Martinez-Fuerte*, 428 U.S. at 563.  Although the Ninth Circuit has held ethnic appearance

15  generally is not an appropriate consideration to justify a vehicle *stop*, the court distinguished where

16  an initial stop is lawful and no particularized suspicion was needed to justify further inquiry.  *United*

17  *States v. Montero-Camargo*, 208 F.3d 1122, 1132 n.16 (9th Cir. 2000).  Having boarded Greyhound

18  buses pursuant to 8 U.S.C. § 1357, CBP officers need no particularized suspicion to question

19  passengers, ask for identification, or request consent to search luggage.  *Drayton*, 536 U.S. at 201.

20         This should be clear:  Greyhound does not condone racial profiling or any form of invidious

21  discrimination, nor does it endorse case law enabling it.  The point here is simply that Plaintiff

22  wishes to hold Greyhound accountable for the actions of federal agents against whom no claim

23  would lie.  But neither Greyhound nor the courts may "forbid law enforcement practices simply

24  because [they] consider[] them distasteful."  *Florida v. Bostick*, 501 U.S. 429, 439 (1991) (reversing

25  determination that law enforcement questioning aboard a crowded bus *per se* constitutes a seizure).

26  Plaintiff's claims seek to use the common carrier laws to thwart federal authority conferred by 8

27  U.S.C. § 1357, and her claims must therefore fall.

28         The sole policy for which Greyhound may be held responsible is its compliance with state

– 12 –

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1   and federal laws, including compliance with the presumptively lawful orders of public officers.  All

2   passengers—regardless of race, ethnicity, or immigration status—enjoy the benefits of Greyhound's

3   compliance as well as the burdens that compliance may entail.  Because each of Plaintiff's claims

4   are based not on this policy, but on the alleged actions of CBP agents, each claim must fail.

5        **D.    Plaintiff Alleges No Reliance on Purportedly Misleading Advertising**

6        Plaintiff premises her CLRA claim and the "fraudulent" prong of her UCL claim on the

7   allegation that Greyhound's permitting Border Patrol agents on board is inconsistent with the Title

8   VI disclosure on Greyhound's website.  In her initial complaint, Plaintiff included no allegations that

9   she ever saw Greyhound's disclosure.  After Greyhound demurred for failure to identify exposure to

10  the advertisement, Plaintiff clarified in her amended complaint that she saw the advertisement before

11  "buying" her ticket, but also clarified that her sister was the one who purchased her ticket.  (FAC

12  ¶ 53).

13       Even with this clarification, Plaintiff pleads no facts showing that she relied on the statement.

14  *See Sateriale v. R.J. Reynolds Tobacco Co.*, 697 F.3d 777, 794 (9th Cir. 2012) ("As with the UCL,

15  consumers seeking to recover damages under the CLRA based on a fraud theory must prove 'actual

16  reliance on the misrepresentation and harm.'") (quoting *Nelson v. Pearson Ford Co.*, 186 Cal. App.

17  4th 983 (2010)).  In fact, Plaintiff's FAC is utterly devoid of any mention of reliance, and it is not

18  even clear from the pleadings that Plaintiff saw the disclosure before her *sister* purchased the tickets.

19       Even if Plaintiff could show reliance, this reliance would not have been reasonable.  Plaintiff

20  states that, because she is Latina, she is fully aware of the location of immigration checkpoints along

21  her route.  (Compl. ¶ 54).  If that is true, Plaintiff was then aware that CBP operated a fixed

22  immigration checkpoint along the route she traveled.[4]  Plaintiff thus cannot contend that the Title VI

23  disclosure led her to believe that she would be free from any CBP enforcement activity, since she

24  should have expected to interact with CBP, at the very least, at the fixed immigration checkpoint.

25       Because Plaintiff did not rely on Title VI disclosure, she cannot show that any injury she may

26  [4] CBP operates a checkpoint along Interstate 8 in eastern San Diego County. Because this is a fact
    that is generally known in this jurisdiction and can be accurately and readily determined from a
27  source whose accuracy is not subject to reasonable dispute (here, the CBP's own website), the Court
    may take judicial notice of this fact. Fed. R. Evid. 201(b).  *See* https://www.cbp.gov/border-
28  security/along-us-borders/border-patrol-sectors/san-diego-sector-california/campo-station

– 13 –

DEFENDANT GREYHOUND'S NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFF'S FAC; MEMORANDUM OF POINTS AND AUTHORITIES

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1   have suffered stemmed from the purported violation.  *See Hansen v. Newegg.com Ams., Inc.*, 25 Cal.

2   App. 5th 714, 724 (2018).  Lacking reliance and resulting damages, Plaintiff's statutory claims fail.

3   *Meyer v. Sprint Spectrum L.P.*, 45 Cal. 4th 634, 641 (2009).

4         For similar reasons, Plaintiff's suggestion that Greyhound "concealed" that it is subject to

5   Border Patrol immigration checks and should have disclosed that fact is without merit.  The law

6   imposes a duty of disclosure in limited circumstances, when the defendant: (1) is in a fiduciary

7   relationship with plaintiff; (2) has exclusive knowledge of material facts unknown to the plaintiff;

8   (3) actively conceals a material fact from the plaintiff; or (4) makes a partial representation but

9   conceals material facts.  *Rubenstein v. The Gap, Inc.*, 14 Cal. App. 5th 870, 877 (2017).

10         Plaintiff's pleadings establish none of these.  Plaintiff suggests that Greyhound's status as a

11   common carrier imposes a duty of disclosure.  However, the law imposes that obligation on

12   *fiduciaries*, and it is well established Greyhound is not a fiduciary merely because it is a common

13   carrier.  *Rookard v. Mexicoach*, 680 F.2d 1257, 1260 (9th Cir. 1982) (common carrier not a fiduciary

14   under California law). Plaintiff does not allege facts demonstrating active concealment, and nowhere

15   does the Complaint establish that Greyhound had exclusive knowledge that it is subject to

16   immigration inspections.  On the contrary, 8 U.S.C. § 1357 and 8 C.F.R. § 287.1 are available to

17   anyone, and decades of publicly available case law illustrates that CBP targets Greyhound buses.

18   *See, e.g.*, *Angulo-Guerrero*, 328 F.3d at 453; *United States v. Alvarez-Sanchez*, 774 F.2d 1036, 1038;

19   *United States v. Moya-Matute*, 735 F. Supp. 2d 1306, 1319 (D.N.M. 2008).  In fact, the possibility of

20   an immigration inspection is not only foreseeable, but to be expected when traveling on a route with

21   a fixed immigration checkpoint, as Plaintiff did, diminishing her expectation of privacy.

22         Finally, as explained, Plaintiff's pleadings fail to establish that anything in Greyhound's Title

23   VI statement is untrue in light of CBP enforcement, since CBP obtains access to all passengers

24   aboard buses, regardless of the passengers' backgrounds.  Her fraud-based claims under the UCL

25   and CLRA must therefore fail.

26       **E.**    **Plaintiff Does Not Show Any Conduct Motivated By Her Protected Status**

27         A claim under the Unruh Civil Rights Act [Civ. Code § 51] requires Plaintiff to show:

28   (1) Greyhound discriminated against her; (2) her protected characteristic was a substantial

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1   motivating reason for the discrimination; (3) Plaintiff suffered harm; and (4) Greyhound's conduct

2   was a substantial factor in causing that harm. Judicial Council Of California Civil Jury Instruction,

3   CACI No. 3060 (2011).

4       As stated above, Plaintiff has not established that she suffered discrimination.  Greyhound

5   complies with lawful orders from law enforcement without regard to the identities of its passengers

6   on any given route, and it is evident in the pleadings that *all* passengers aboard Plaintiff's bus were

7   subject to immigration inspection and *all* passengers arrived in Phoenix at the same time, regardless

8   of their ethnicity.  Further, Plaintiff does not allege that she was questioned, singled out, or racially

9   profiled by the agents.  This is fatal to her claim; one who complains of discrimination in the

10  abstract, but who has not herself suffered unequal treatment, has no statutory standing under the

11  Unruh Act.  *Angelucci v. Century Supper Club*, 41 Cal. 4th 160, 175 (2007) (affirming that Unruh

12  Act plaintiff "cannot sue for discrimination in the abstract, but must actually suffer the

13  discriminatory conduct"); *Surrey v. TrueBeginnings, LLC*, 168 Cal. App. 4th 414, 419 (2008) (no

14  standing to challenge policy of charging men more than women where men did not pay inflated

15  price).

16      Independently, Plaintiff does not even attempt to plead that her protected characteristic was a

17  substantial motivating factor for the discrimination.  Indeed, her sole allegation on the point states

18  that "Defendants . . . continue to violate the Unruh Act by denying, aiding in the denial of, and/or

19  inciting a denial of Greyhound passengers of the full and equal accommodations" in its business

20  establishments.  (FAC ¶¶ 121–22).  This vague allegation about the denial of accommodations to

21  other passengers does nothing to establish that *her* protected characteristic motivated *this* alleged

22  discrimination. *See Angelucci*, 41 Cal. 4th at 175.

23      Finally, even assuming a half-hour delay were sufficient harm, the Complaint does not allege

24  Greyhound's conduct was a substantial factor in causing the delay.  Rather, as is apparent, the CBP

25  agents determined that an undocumented immigrant was aboard and delayed the bus while they

26  questioned him or her.  Their authority to do so is clear.  *See United States v. Outlaw*, 134 F. Supp.

27  2d 807, 817 (W.D. Tex. 2001) (holding that police may lawfully delay passengers on a bus to

28  investigate a crime they discover).

– 15 –

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

### F.     Plaintiff Pleads Insufficient Facts to Show Unfair Or Unlawful Conduct

As an initial matter, Greyhound notes that 8 U.S.C. § 1357 is fatal to Plaintiff's claims under California law independently of federal preemption.  As the California Supreme Court has held "Courts may not simply impose their own notions of the day as to what is fair or unfair. . . . If the Legislature has permitted certain conduct or considered a situation and concluded no action should lie, courts may not override that determination."  *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 182 (1999).  Because the law permits CBP's actions, they provide no basis for Plaintiff's UCL claim.

Returning to Plaintiff's allegations, the fraudulent prong of Plaintiff's UCL claim fails for the reasons stated above.  However, she also fails to plead sufficient facts to support her unfair and unlawful prongs.

### 1.     Plaintiff Fails To Plead Facts Sufficient To Demonstrate Predicate Violations

Plaintiff presents a laundry list of statutes that Greyhound purportedly violated, but she pleads no facts to substantiate any such violation, much less her allegation that she has suffered pecuniary harm as a result.

- **False Advertising Law, Cal. Bus. & Prof. Code § 17500.**  Plaintiff contends that Greyhound falsely advertises that it does not discriminate against its passengers.  (FAC ¶ 90(a)).  As stated above, Greyhound's policies are common to all passengers.  Further, Plaintiff fails to allege reliance.  *See Beyer v. Symantec Corp.*, 333 F. Supp. 3d 966, 980 (N.D. Cal. 2018).

- **Consumers Legal Remedies Act, Cal. Civ. Code § 1750; Unruh Civil Rights Act, Cal. Civ. Code § 51.**  Greyhound explains above why these claims fail.

- **Cal. Civ. Code § 2100**.  Plaintiff asserts that Greyhound violated this statute by failing to do everything necessary to protect Plaintiff from harm.  (FAC ¶ 90(d).  The statute requires common carriers to ensure adequate safety.  Plaintiff alleges no facts to show her bus was unsafe.

- **Cal. Civ. Code § 2103**. Plaintiff asserts that Greyhound failed to ensure passengers are treated with respect and civility, and by failing to respond to complaints of discrimination.  (FAC ¶ 90(e)).  She fails to allege that she was treated disrespectfully or uncivilly or that she ever made a complaint of discrimination.

DEFENDANT GREYHOUND'S NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFF'S FAC; MEMORANDUM OF POINTS AND AUTHORITIES

- **Cal. Civ. Code § 2104**.  Plaintiff asserts that Greyhound violated this statute by deviating from regular bus routes and stopping in order to allow immigration inspections.  (FAC ¶ 90(f)).  Plaintiff pleads no facts to show that the bus deviated from its course, nor does Plaintiff allege that there was any unreasonable delay, particularly as she does not allege she arrive in Phoenix late.

- **Cal. Civ. Code §§ 1572, 1573**.  Plaintiff alleges that Greyhound violated various fraud statutes.  However, she does not allege reliance or causation, as required.  *See Sateriale*, 697 F.3d at 794 (holding that UCL claims sounding in fraud require allegations of actual reliance).

- **Cal. Civ. Code § 43**. The statute provides that every person has the right, *subject to the qualifications and restrictions provided by law*, to be free from bodily restraint or harm, personal insult, defamation, and injury to personal relations.  Plaintiff alleges Greyhound violated this statute by failing to prevent passengers from being insulted or harmed.  (FAC ¶ 90(i)).  Plaintiff does not allege that she was insulted or harmed.  Moreover, the statute cannot restrain speech simply because one might find it insulting.  *Texas v. Johnson*, 491 U.S. 397, 414 (1989).

Because Plaintiff offers no factual basis for these violations, she cannot use them as a basis for her UCL claim.  *Hobby Indus. Ass'n of Am., Inc. v. Younger*, 101 Cal. App. 3d 358, 372 (1980) (holding that a defense to an underlying violation is a defense to a UCL claim).

### 2.      Plaintiff Does Not Establish Unfairness

Additionally, these facts collectively establish no "unfairness" under the UCL.  For a business practice to be unfair, (1) the consumer injury must be substantial; (2) the injury must not be outweighed by any countervailing benefits; and (3) it must be an injury that consumers could not reasonably have avoided.  *Camacho v. Automobile Club of S. California*, 142 Cal. App. 4th 1394, 1403 (2006).

Plaintiff identifies no substantial injury.  Rather she suggests that she may have paid "less" or would not have purchased a Greyhound ticket if she knew she was aware that the bus was subject to CBP inspections.  (FAC ¶ 6).  Notably, however, this injury is belied by her statement that she is "well aware" of the location of CBP inspection checkpoints, thus demonstrating her knowledge that the schedule she rode was, in fact, subject to an immigration inspection.  (*See id.* ¶ 54).

Moreover, business conduct is not unfair if done for a legitimate business reason.  *See, e.g.*, *Motors, Inc. v. Times Mirror Co.*, 102 Cal. App. 3d 735, 740 (1980).  Here, Greyhound merely complies with federal law when it accedes to CBP demands pursuant to 8 U.S.C. § 1357, providing a

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

– 17 –

1   legitimate business reason and countervailing interest outweighing Plaintiff's purported injury.

2   Moreover, Plaintiff fails to establish that she could not have avoided the purported injury.

3   Plaintiff asserts that Greyhound is the only company targeted by CBP raids, which indicates that she

4   had alternative bus providers with a lower likelihood of CBP interaction.  *See Shadoan v. World Sav.*

5   *& Loan Ass'n*, 219 Cal. App. 3d 97, 103, 106 (1990) (no unfairness under UCL when products

6   without disputed penalty were available).  Plaintiff likewise could have chosen other means of travel,

7   for example, by train, airplane, private car or another bus company.  *See id.*  Or, indeed, Plaintiff

8   could have remained in San Diego.  *See Olsen v. Breeze, Inc.*, 48 Cal. App. 4th 608, 628–29 (1996).

9   Plaintiff therefore fails to demonstrate that Greyhound's purported practices are "unfair"

10  within the meaning of the UCL.  Her claim should be dismissed.

11      **G.      There Is No Reasonable Possibility That Plaintiff Will Establish A Class**

12  As the above discussion illustrates, the legal issues that render Plaintiff's claims insufficient

13  will present individualized issues that will consume the litigation—particularly given the overbroad

14  class definition.  "Where the complaint demonstrates that a class action cannot be maintained on the

15  facts alleged, a defendant may move to strike class allegations prior to discovery."  *Sanders v. Apple*

16  *Inc.*, 672 F. Supp. 2d 978, 990 (N.D. Cal. 2009).  "Before a motion to strike is granted, the court

17  must be convinced that any questions of law are clear and not in dispute, and that under no set of

18  circumstances could the claim or defense succeed."  *Id.*

19  In order to certify an injunctive-relief class, Plaintiff must establish that (1) the class is

20  sufficiently numerous; (2) there are questions of law or fact common to the class; (3) Plaintiff's

21  claims and defenses are typical to the class; (4) Plaintiff will fairly and adequately represent the

22  class; and (5) the defendant has acted or refused to act in a manner common to the class.  Fed. R.

23  Civ. P. 23(a),(b)(2).

24  Here, there is no reasonable possibility that Plaintiff can establish an appropriate class.

25          1.      **Plaintiff Cannot Establish Commonality**

26  Plaintiff's proposed class encompasses "all California consumers who, since January 20,

27  2017, have purchased a Greyhound bus ticket for travel to, from, or within California, including a

28  subclass of Latino and non-white California consumers who, since January 20, 2017, have purchased

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

– 18 –

a Greyhound bus ticket."  (FAC ¶ 79).  Given the enormity of the proposed class, Plaintiff cannot demonstrate commonality sufficient to maintain a class.

Commonality requires the Plaintiff to show that there are questions of law or fact common to the class.  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011).  As the Supreme Court has explained, this requires that the class have suffered the same injury.  *Id.*

Here, Plaintiff's class includes *all* California consumers who purchased a Greyhound bus ticket since January 20, 2017.[5]  These individuals cannot have shared the same injury.  Plaintiff does not allege that CBP boards every Greyhound bus between each stop, nor does she even go so far as to show that *most* Greyhound passengers encounter CBP agents.  Rather, Plaintiff suggests that there's a policy of allowing CBP agents aboard its buses.  This recalls *Dukes*, in which Wal-Mart's alleged policy of allowing local managers to make personnel determinations allegedly enabled a culture in which these managers engaged in sex discrimination.  *Id.* at 355.  Here, the alleged policy of allowing CBP aboard, even if one existed, would at most enable the circumstances in which individual CBP agents somehow behave poorly in the limited instances in which they demand to board a bus.

This is not enough to show commonality, as it would not "resolve an issue that is central to the validity of each one of the claims in one stroke."  *Id.* at 355.  For example, it would remain for the Court to determine whether CBP boarded each class member's bus, and whether CBP engaged in discriminatory treatment of passengers.  *See Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 159 n. 15 (1982) (holding that commonality could have been established by showing common policy that *manifested* in the same general manner).  Even if CBP boarded each bus, establishing that a CBP agent acted in a discriminatory fashion in one instance does not demonstrate that CBP behaved inappropriately in another instance.  *See Dukes*, 564 U.S. at 355–56.  Plaintiff's commonality argument hangs on the sole assumption that CBP agents *necessarily* discriminate against passengers—an assumption the law does not permit.  *See U.S. Postal Serv.*, 534 U.S. at 10.

This is to say nothing of those passengers who purchased tickets but did not ride the bus, like

[5] It is no coincidence that Plaintiff begins the class period on the day of the last presidential inauguration.  Rather, it underscores that this is a fight between Plaintiff and the federal government—not Greyhound.

– 19 –

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

Plaintiff's sister, those who were exposed to no purportedly misleading advertisements, or those who purchased tickets and were lawfully approached by a CBP agent in the public areas of a Greyhound terminal.  *See Patel v. City of Montclair*, 798 F.3d 895, 900 (9th Cir. 2015) (holding there is no privacy interest in the portions of a private business that are open to the public).

### 2.   Plaintiff Cannot Establish Typicality

In the Ninth Circuit, "[t]he test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct."  *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (citing *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)).  Class treatment is inappropriate if "there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to [her]."  *Hanon*, 976 F.2d at 508.

As just discussed, the class does not share a common injury, and Plaintiff bases her action on conduct which, if not unique to her, is shared by only a small subset of her class.  Further, there is substantial danger that Plaintiff will be preoccupied by defenses unique to her.  For example, she cannot dispute that she traveled within 100 miles of an international border on her trip to Phoenix.  As illustrated by the extensive discussion of 8 U.S.C. § 1357 here, the applicability of a preemption defense will be a central component of this litigation, which may not be necessary for those passengers who rode buses outside of the 100 mile radius.  Further, Plaintiff pleads no reliance, and no exposure to discriminatory conduct.  These are central to her claims, and thus will preoccupy the Plaintiff at the expense of absent class members to whom these defenses may be inapplicable.

### 3.   Plaintiff Cannot Establish That She Is An Adequate Representative

Finally, Plaintiff's allegations reveal a similarly insurmountable hurdle to establishing her adequacy as a class representative.  A class representative is not adequate if she fails to seek all available remedies on behalf of the proposed class.  *Drimmer v. WD-40 Co.*, No. 06-CV-900 W (AJB), 2007 WL 2456003, at *3 (S.D. Cal. Aug. 24, 2007); *Tasion Commc'ns, Inc. v. Ubiquiti Networks, Inc.*, 308 F.R.D. 630, 642 (N.D. Cal. 2015) (quoting *Drimmer*, 2007 WL 2456003); *Turcios v. Carma Labs., Inc.*, 296 F.R.D. 638 (C.D. Cal. 2014)

DEFENDANT GREYHOUND'S NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFF'S FAC; MEMORANDUM OF POINTS AND AUTHORITIES

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

1    Here, the only monetary relief Plaintiff seeks is for her attorneys.  Although she leaves

2  damages in issue by reserving her right to seek them at any time, she states that she does not yet seek

3  them.  Unless and until she clarifies her allegations, she is not an adequate representative for the

4  class.

5    Because the face of Plaintiff's First Amended Complaint demonstrate that she cannot

6  establish commonality, typicality, or adequacy, the Court should strike the class allegations from this

7  action.  *See Sanders*, 672 F. Supp. 2d at 990.

8  **V.    CONCLUSION**

9    For the foregoing reasons, Greyhound respectfully requests that the Court dismiss each of

10  Plaintiff's claims with prejudice.  Should the Court find dismissal with prejudice unwarranted,

11  Greyhound requests that the Court compel the joinder of CBP to protect its own interest in this

12  litigation and to prevent exposing Greyhound to inconsistent obligations.  Finally, Greyhound

13  respectfully requests that the Court strike Plaintiff's class allegations.

14    DATED:  February 7, 2019

15                    REED SMITH LLP

16

17                    By: /s/ Jesse L. Miller
                           Jesse L. Miller
18                         Attorneys for Defendant
                           GREYHOUND LINES, INC.

19

20

21

22

23

24

25

26

27

28

DEFENDANT GREYHOUND'S NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFF'S FAC; MEMORANDUM OF POINTS AND AUTHORITIES

REED SMITH LLP
A limited liability partnership formed in the State of Delaware